■ RAND & PASEKA MFG. CO., INC., Appellant-Respondent, v HOLMES PROTECTION, INC., et al., Respondents-Appellants.— Order of the Supreme Court, New York County (Irad S. Ingraham, J.), entered on December 9, 1986, which set aside, as a matter of law, a jury verdict awarding plaintiff-appellant-cross-respondent Rand and Paseka compensatory damages in the amount of $527,611.67 and punitive damages in the amount of $500,000 for gross negligence on the part of defendants-respondents-cross-appellants Holmes, and which sustained the finding of breach of contract, and entered judgment for Rand & Paseka in the amount of $7,872, representing liquidated damages, costs and interest, unanimously modified, on the law, to reinstate the jury's verdict awarding compensatory damages and to strike the liquidated damages, costs and interest, and otherwise affirmed, without costs.

Appellant Rand & Paseka was a leading maker of religious jewelry. This required large amounts of gold which the company stored on its premises. On Saturday afternoon, March 31, 1979, Rand's premises and safe were broken into. The burglary took over 2½ hours to complete. During that time, the burglars carried approximately 450 pounds of gold down 10 flights of stairs. On the day of the break-in and for more than 27 years prior, Rand had been a subscriber to respondent Holmes.

Under its contract with Rand, any unauthorized entry created an "alarm condition" requiring Holmes to respond within 15 minutes by sending investigators. An alarm condition exists if, inter alia, a subscriber's premises are entered on an unauthorized day. Holmes maintains instruction cards

which indicate the authorized days for each subscriber. If an instruction card reads open Monday through Friday, then an entry on Saturday is unauthorized. In case an authorized person enters on an unauthorized day, Holmes provides an "opening code" which must be transmitted from the protected premises to Holmes. Nevertheless, even when the opening code is received, Holmes' operating procedure is to consider it an alarm condition and send guards within 15 minutes. Rand was open Monday through Friday, and Holmes should have had an instruction card, and other devices to indicate as much. Occasionally, usually during pre-Christmas season, Rand opened on Saturday mornings, closing before 1:00 P.M. Rand would notify Holmes on Friday if it planned to be open the next day.

The facts which follow are relevant to our decision. Holmes sent two guards to Rand 11 hours after the break-in, which occurred in the afternoon. Rand did not tell Holmes it would open that Saturday. Holmes claims to have received the opening code on the day of the burglary, but failed to produce the only person who could substantiate that claim, the operator on duty that day. A few weeks before the burglary, Holmes received an unauthorized entry signal from Rand. During that break-in, nothing was stolen. Holmes claims to have promptly informed Rand of that earlier break-in. Rand acknowledges being told but only after the burglary four weeks later. As mentioned above, Holmes uses instruction cards which contain the days each subscriber is open. Within days after the burglary, Rand requested production of its cards. Almost two months later, Holmes admitted it did not have the relevant cards. In any event, the utility of those cards is problematical because the operation manager on duty at the time of the break-in, in his testimony, confused the Monday through Friday code with the Monday through Saturday code.

Based on the above evidence, a jury found Holmes liable for gross negligence. Ordinary negligence was not an issue because the parties stipulated that their contract limited Rand's recovery to the value of one year's premium unless Rand established gross negligence. This is the liquidated damages amount for which judgment of $7,872 was entered. Justice Irad S. Ingraham set aside the jury's verdict as a matter of law. We hold that, as a matter of law, sufficient evidence existed for a jury to find gross negligence.

Assuming a jury is properly charged, it has the duty to find facts and the right to determine whether gross negligence

occurred. As the Court of Appeals has stated, "Where the inquiry is to the existence or nonexistence of gross negligence, the ultimate standard of care is different, but the question nevertheless remains a matter for jury determination." *(Food Pageant v Consolidated Edison Co.,* 54 NY2d 167, 173.) Justice Ingraham properly charged the jury that gross negligence occurs when a party proceeds in reckless disregard of the consequences of its acts. (PJI 2:10A [1986 Supp].) However, on a crucial point, whether the opening code was received by Holmes, Justice Ingraham made a different finding than the jury. Partly based on that finding, he dismissed the jury's verdict as a matter of law. A Judge can only do that if he concludes that by no rational process could a jury find for the plaintiff based on the evidence. *(Blum v Fresh Grown Preserve Corp.,* 292 NY 241, 245; *Martin v City of Albany,* 42 NY2d 13, 18.)

In this case, a jury could have found gross negligence if it accepted Rand's version of three critical issues. First, contrary to Justice Ingraham's finding, the jury could have decided that Holmes did not receive an opening code from Rand on the day of the break-in. Additionally, it could have determined that Holmes failed to inform Rand about the prior break-in until after the burglary. Further, there would be a significant breach of duty if Holmes failed properly to maintain the instruction cards with respect to open days. If we accept those findings as true, and add them to the ordinary negligence to which Holmes admits or which was revealed at trial, as a matter of law the jury's finding that Holmes was guilty of gross negligence cannot be disturbed.

Inasmuch as plaintiff will be awarded damages for gross negligence, we eliminate the liquidated damages because they represent what Holmes would owe Rand, under their contract, for ordinary negligence. Additionally, punitive damages are not called for here. A court only awards those damages in singularly rare cases. *(Knieriemen v Bache Halsey Stuart Shields,* 74 AD2d 290, 294.) For example, when plaintiffs show extreme aggravating factors such as improper state of mind or malice *(see, Roginsky v Richardson-Merrell, Inc.,* 378 F2d 832, 843 [2d Cir 1967])* or wrongdoing to the public. *(Walker v Sheldon,* 10 NY2d 401.) Unlike *Walker,* this is not such a case. Concur—Kupferman, J. P., Sullivan, Ross, Milonas and Wallach, JJ.